IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>THE ESTATES OF STEPHEN ROMNEY SWENSEN, and CREW CAPITAL GROUP, LLC, a Nevada limited liability company,<br><br>        Defendants,<br><br>WENDY SWENSEN, an individual, SARIA C. RODRIGUEZ, an individual, WS FAMILY IP, LLC, a Utah limited liability company, WINGMAN, LLC, a Utah limited liability company, and SWENSEN CAPITAL, LLC, a Utah limited liability company,<br><br>        Relief Defendants. | **MEMORADUM DECISION AND ORDER DENYING RELIEF DEFENDANT WENDY SWENSEN'S MOTION TO MODIFY STIPULATED ORDER FREEZING ASSETS**<br><br>Case No. 1:22-cv-00135-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Now before the court is Relief Defendant Wendy Swensen's (Wendy)[1] Motion to Modify

Stipulated Order Freezing Assets.[2]  Having received Opposition briefs filed by Plaintiff

Securities and Exchange Commission (the Commission),[3] Receiver Chad Pehrson,[4] an amicus

brief filed by victims of Defendant Stephen Swensen's (Stephen) fraudulent investment scheme,[5]

---

[1] Because Relief Defendant Wendy Swensen shares a last name with Defendant Stephen Swensen and his estate, the court will refer to each by their first names with no disrespect intended by the apparent informality.

[2] Dkt. 46, *Relief Defendant Wendy Swensen's Motion to Modify Stipulated Order Freezing Assets* (*Motion*).

[3] Dkt. 57, *Plaintiff's Opposition to Relief Defendant Wendy Swensen's Motion to Modify Stipulated Order Freezing Assets* (*Commission's Opposition*).

[4] Dkt. 56, *Receiver Chad S. Pehrson's Brief Opposing Relief Defendant Wendy Swensen's Motion to Modify Stipulated Order Freezing Assets* (*Receiver's Opposition*).

[5] Dkt. 58-1, *Amicus Curiae Brief of Investors Whose Retirements Were Stolen* (*Amicus Brief*).

1

and supplemental briefing from the parties,[6] the Motion is now fully briefed and ripe for review.

For the reasons explained below, the Motion is denied.

## BACKGROUND AND PROCEDURAL HISTORY

On October 14, 2022, the Commission filed a Complaint against Defendants The Estate

of Stephen Romney Swensen and Crew Capital Group, LLC, alleging violations of the Securities

Act of 1933 and the Securities Exchange Act of 1934.[7]  As alleged, Stephen perpetrated a

yearslong fraudulent investment scheme "defraud[ing] over 50 investors of at least $29.3

million."[8]  The Commission also named several Relief Defendants, Wendy among them, as

recipients of ill-gotten gains to which they had no legitimate claim.[9]  According to the

Complaint, Stephen "gave Wendy at least $356,000 in investor funds directly from Crew Capital,

and also provided Wendy with real property and other assets [Stephen] purchased at least in part

using investor funds."[10]  The Commission sought, among other relief, disgorgement from Relief

Defendants of all ill-gotten gains or unjust enrichment derived from the alleged fraud.[11]

Simultaneously, the Commission also filed a Motion requesting, among other things, a

preliminary injunction and a freeze of Defendants' and Relief Defendants' assets to prevent

dissipation and facilitate a potential recovery for defrauded investors.[12]  On February 2, 2023, the

---

[6] Dkt. 70, *Plaintiff's Supplemental Brief Regarding Defendant Wendy Swensen's Motion to Modify Stipulated Order Freezing Assets (Commission's Supplemental Brief)*; Dkt. 71, *Relief Defendant Wendy Swensen's Supplemental Briefing (Relief Defendant's Supplemental Brief)*; Dkt. 72, *Receiver Chad S. Pehrson's Supplemental Brief Opposing Relief Defendant Wendy Swensen's Motion to Modify Stipulated Order Freezing Assets (Receiver's Supplemental Brief)*.

[7] Dkt. 2, *Complaint* at 11–13.

[8] *Id.* at 2.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.* at 14.

[12] Dkt. 3, *Plaintiff's Motion for Preliminary Injunction, Asset Freeze, and Other Preliminary Relief, and Memorandum in Support Thereof.*

parties filed a Motion seeking entry of a stipulated order freezing the assets of Defendants and

Relief Defendants,[13] which the court granted on February 6, 2023.[14]  By the terms of the

stipulated Order, except as otherwise specified, all of Wendy's assets were frozen.[15]  The Order

expressly exempted certain assets to cover Wendy's reasonable living expenses and attorney

fees.[16]  To the extent any Defendants or Relief Defendants believed assets should not be subject

to the freeze, the Order provided they "may move the court for a modification of this Order."[17]

On August 8, 2023, the court granted a stipulated Motion to Appoint Receiver.[18]

Pursuant to the court's Order, the Receiver was directed to take control of all Receivership

Property, investigate the disposition of that property, and take necessary steps to recover and

conserve it.[19]  The Receiver was authorized to "marshal[] and preserv[e]" assets of Relief

Defendants that, among other things, were "attributable to funds derived from investors or clients

of the Defendants," "were fraudulently transferred by the Defendants," or "may otherwise be

includable as assets of the estates of the Defendants."[20]

On September 18, 2023, the court entered Consent Judgments in favor of the

Commission against Defendants and Relief Defendants, including Wendy.[21]  As adjudged,

Wendy agreed to pay disgorgement of ill-gotten gains, with prejudgment interest, in an amount

---

[13] Dkt. 26, *Unopposed Motion for Entry of Stipulated Order Freezing Assets, Requiring an Accounting, Protecting Documents, and Preliminary Injunction Against Crew Capital Group, LLC.*

[14] Dkt. 27, *Stipulated Order Freezing Assets, Requiring an Accounting, Protecting Documents, and Preliminary Injunction Against Crew Capital Group, LLC* (*Order*).

[15] *Id.* at 3.

[16] *Id.*

[17] *Id.* at 12.

[18] Dkt. 38, *Order granting Motion to Appoint Receiver*; *see also* Dkt. 36, *Stipulated Motion to Appoint Receiver.*

[19] *Id.*

[20] *Id.*

[21] *See* Dkt. 41, 42, 43, 44, 45.

to be determined upon a later motion of the Commission.[22]

Wendy filed the present Motion on October 3, 2023.[23]  In it, Wendy seeks to exclude

from her stipulated asset freeze the proceeds from three life insurance policies against Stephen

naming Wendy as a beneficiary.[24]  The Motion is separately opposed by Receiver,[25] the

Commission,[26] and, in an amicus brief,[27] a group of investors defrauded by Stephen's scheme.

Having considered the parties' and amici's briefs, and concluding oral argument would

not be materially helpful, the Motion is now ripe for review.

## LEGAL STANDARD

The Commission's enforcement authority and ability to seek equitable relief—including

injunctions and disgorgement—is derived from federal law.[28]  Pursuant to this statutory grant

and the court's inherent authority to fashion equitable relief, the court may "freeze the assets of a

party not accused of wrongdoing where that party: '(1) has received ill-gotten funds; and (2)

does not have a legitimate claim to those funds.'"[29]  An asset freeze is "ancillary relief to

facilitate enforcement of any disgorgement remedy that might be ordered in the event a violation

---

[22] Dkt. 43, *Judgment as to Relief Defendant Wendy Swensen* at 2.

[23] *Motion*.

[24] *Id.* at 2.

[25] *Receiver's Opposition*.

[26] *Commission's Opposition*.

[27] *Amicus Brief*.

[28] *See* Securities and Exchange Act of 1934 § 21, 15 U.S.C. § 78u(d)(5) ("In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.").  *See also SEC v. GenAudio Inc.*, 32 F.4th 902, 947 (10th Cir. 2022) (quoting *Liu v. SEC*, 591 U.S. 1940 (2020) ("The Court holds today that a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5).")).

[29] *SEC v. End of the Rainbow Partners, LLC*, No. 17-cv-02670-MSK-NYW, 2019 WL 8348323, at *4 (D. Colo. Nov. 25, 2019) (quoting *Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011)).

is established at trial."[30]  "A freeze of assets is designed to preserve the status quo by preventing

the dissipation and diversion of assets."[31]  Inversely, the court also has the "authority to release

frozen personal assets, or lower the amount frozen."[32]  A party seeking to unfreeze or release

assets "must establish that the funds [she] seeks to release are untainted and that there are

sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a

violation is established at trial."[33]

## DISCUSSION

Wendy requests the court modify her asset freeze to release the proceeds from three life

insurance policies against Stephen on which she is a named beneficiary.[34]  First, she argues

modification is appropriate based on the terms of the parties' stipulated Order imposing the

freeze.[35]  Second, Wendy contends that, under Utah law, the Commission has no legal basis to

assert a claim over the life insurance proceeds, except for those premiums paid with fraudulently

obtained funds.[36]  For the reasons explained below, the court concludes Wendy has failed to

demonstrate a change to the *status quo* is appropriate while the Receiver's investigation and

accounting is ongoing, and that the state law on which Wendy relies does not apply to the court's

injunction and asset freeze.  Accordingly, Wendy's Motion is denied.

---

[30] *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990).  *See also SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (finding asset freeze "justified as a means of preserving funds for the equitable remedy of disgorgement.").

[31] *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000) (citations omitted).  *See also Basic Rsch., L.L.C. v. Cytodyne Tech., Inc.*, No. 2:99-cv-343K, 2000 WL 33363261, at *11 (D. Utah Dec. 20, 2000) (noting purpose of preliminary injunction is to "preserve the status quo until the full merits of the claims are tried.").

[32] *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001).

[33] *SEC v. Stein*, No. 07 CIV. 3125GEL, 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009).

[34] *Motion* at 2.

[35] *Id.* at 8.

[36] *Id.* at 9.

## I.   A change to the *status quo* is not warranted

Wendy first argues a modification to the asset freeze is proper based on the terms of the parties' stipulated agreement.[37]  According to Wendy, when negotiating the terms of the asset freeze, she specifically requested the inclusion of the provision allowing her to seek modification of the freeze if she "believe[s] that assets or funds in [her] possession, custody, or control are not or should not be subject to this Order."[38]  She requested this provision because at the time the court's Order was entered, she was still in discussions with the Commission about its right to assert a claim over the life insurance proceeds.[39]  Wendy now believes the proceeds should not be subject to the asset freeze and the Order permits the requested modification.[40]  The Commission argues the Motion should be denied because Wendy has failed to meet her burden of demonstrating the proceeds are untainted by Stephen's fraud, or that the modification would be in the interest of investors.[41]  The court agrees with the Commission.

The court concludes the Order does not automatically authorize the release of the proceeds, Wendy has failed to establish the proceeds are untainted by the fraud, and it is not clear while the Commission's investigation is ongoing that the proceeds exceed her liability. Wendy appears to believe the terms of the Order entitle her to the release of the proceeds.[42] However, the Order provides Wendy with only the right she is now exercising—should she

---

[37] *Id.* at 8.

[38] *Id.* (quoting *Order* at 12).

[39] *Id.*

[40] *Id.*; Dkt. 61, *Relief Defendant Wendy Swensen's Omnibus Reply Memorandum in Support of Motion to Modify Stipulated Order Freezing Assets* (*Wendy's Reply*) at 3 (arguing the modification would not change the status quo because "Wendy has never conceded, stipulated, or otherwise agreed that the Proceeds are subject to the Asset Freeze or disgorgement by the Commission.").

[41] *Commission's Opposition* at 5.

[42] *See Wendy's Reply* at 3–5.

believe assets or funds currently subject to the asset freeze should not be, she "may move the

court for a modification of this Order."[43]

This language does not relieve Wendy of her burden to demonstrate a change to the status

quo is appropriate, and she has not done that.[44]  To unfreeze assets currently subject to the freeze,

Wendy "must establish that the funds [she] seeks to release are untainted and that there are

sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a

violation is established at trial."[45]  As the Commission highlights, Wendy has failed to do this.[46]

She offers no facts or analysis demonstrating the policies were maintained with untainted funds.

Instead, she offers only conclusory assertions, such as "[t]o Wendy's knowledge, the

Commission's investigation has only revealed the possible use of investor funds to make

payments on the Life Insurance Policies starting in 2015, two years after the date of the most

recent Life Insurance Policy."[47]  Or, "the Proceeds at issue and currently subject to the Asset

Freeze grossly exceed the total amount of Investor Paid Premiums."[48]  These assertions are

insufficient to meet her burden.

What is clear at this point is the proceeds stem from life insurance policies substantially

maintained by funds Stephen fraudulently obtained from investors.[49]  Other than arguing some of

---

[43] *Order* at 12.

[44] In her Reply, Wendy asserts she does not have the burden to establish a modification to the asset freeze is appropriate.  Rather, she argues, the burden is on the Commission to demonstrate these assets should be frozen. *Reply* at 6.  As discussed, this is a clear misstatement of the law.  The assets are presently subject to a duly authorized freeze—one which Wendy agreed to.  It is her burden to demonstrate a modification is warranted.  *See Stein*, 2009 WL 1181061, at \*1.  For the purposes of obtaining some form of preliminary injunctive relief, the Commission has already met its burden.  When it moves for disgorgement at some future date, it will again be the Commission's burden to demonstrate the amount sought is justified.

[45] *Stein*, 2009 WL 1181061, at \*1.

[46] *Commission's Opposition* at 6.

[47] *Motion* at 12.

[48] *Id.*

[49] *See Commission's Opposition* at 2–5.

the early premiums on one of the policies were paid before the fraud allegedly began, Wendy offers no evidence suggesting the bulk of premiums were paid with untainted funds.

Moreover, Wendy's assertion that the proceeds exceed the amount of investor paid premiums is unpersuasive.  While the Commission's and Receiver's investigation is ongoing, at least two aspects of Wendy's potential liability are undetermined.  First, the Commission alleges Stephen gave Wendy "at least $356,000 in investor funds . . . and also provided Wendy with real property and other assets Swensen purchased at least in part using investor funds."[50] Accordingly, $356,000 is not the final amount of disgorgement Wendy will be subject to—that is simply the floor.  The investigation may tie more of Wendy's assets to tainted funds.  Second, as the Receiver's Opposition demonstrates, there is a legal question as to whether the Commission may disgorge only the amount of premiums paid with investor funds, or profits derived from the use of the fraudulently obtained funds, that is to say the proceeds from the policies themselves.[51] The court need not resolve this question until the Commission moves for disgorgement from Wendy, but it further demonstrates why modification of the asset freeze would be inappropriate at this time.

For the reasons explained above, Wendy has failed to meet her burden to demonstrate a change to the status quo is warranted.  It is not clear the proceeds Wendy seeks to release from the asset freeze are untainted or that unfreezing the proceeds would leave sufficient funds to satisfy a future disgorgement order.

---

[50] *Complaint* at 4.

[51] *Receiver's Opposition* at 5.

## II.   Utah law is not applicable

Next, Wendy argues Utah law requires release of the proceeds from the asset freeze.  She asserts the Commission "has no legal basis to assert a claim over the proceeds" from the policies because they are protected by Utah law "from creditors like the Commission."[52]  In her Supplemental Brief, Wendy affirms that state law controls here and excludes the proceeds from the freeze because "the existence of a property interest is determined according to state law."[53]  However, this is an answer to a question not asked.  No party disputes that Wendy, as a named beneficiary on the life insurance policies, has a property interest in the proceeds.  Indeed, the reason the proceeds are currently subject to the asset freeze is because they are indisputably her property.  The relevant question is whether state law supersedes the Commission's authority under federal law and a federal court's broad equitable powers.  While the Tenth Circuit has not directly addressed this issue, based on the overwhelming consensus of other courts, this court concludes the answer to that question is no.[54]  Utah state law has no bearing on the scope of an injunction and asset freeze issued pursuant to this court's equitable authority and the

---

[52] *Motion* at 9–10.

[53] Dkt. 71, *Relief Defendant Wendy Swensen's Supplemental Briefing* at 2.

[54] *See, e.g.*, *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003) (quotations and citations omitted) (finding "state law limitations" do not control the "permitted scope of remedial orders under federal regulatory statutes" because "federal courts have inherent equitable authority to issue a variety of ancillary relief measures in actions brought by the SEC to enforce the federal securities laws."); *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990) (quotations and citations omitted) (noting a Commission freeze order need not be "tested against state law standards" and "Congress has authorized the Commission to obtain preliminary injunctive relief upon a proper showing, and it is a matter of federal law whether the showing the Commission has made is sufficient to support an interlocutory freeze order."); *SEC v. Solow*, 682 F.Supp. 2d 1312, 1325 (S.D. Fla. 2010) ("This Court has broad equitable power to reach assets otherwise protected by state law to satisfy a disgorgement . . . For example, a district court can ignore state law exemptions as well as other state law limitations on the ability to collect a judgment in fashioning a disgorgement order."); *SEC v. Gottlieb*, 2023 WL 1795186, at *8 (S.D.N.Y. Feb. 7, 2023) (affirming "the Court has broad equitable authority to disregard state law where necessary to ensure the vitality of the federal securities laws.  While the Court may be guided by state law, the enforcement of a federal court's disgorgement order may reach assets otherwise protected by state law."); *SEC v. Musella*, 818 F.Supp. 600, 602 (S.D.N.Y. 1993) (finding the extent to which a party's "assets and income would be exempt from attachment under [state] law does not alter his duty to pay the amount" owed under a federal court order); *SEC v. Aragon Capital Advisors, LLC*, No. 07 Civ. 919(FM), 2011 WL 3278907, at *7 (S.D.N.Y July 26, 2011) (same).

Commission's Congressionally authorized enforcement powers.  Accordingly, this argument also

fails.

**CONCLUSION**

For the reasons provided above, Relief Defendant Wendy Swensen's Motion to Modify

Stipulated Order Freezing Assets[55] is DENIED.

SO ORDERED this 29th day of January 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[55] *Motion.*