# EXHIBIT B

R. Jeremy Adamson (12818)
Tucker F. Levis (17793)
Henry R. Morris (19020)
**BUCHALTER LLP**
60 E. South Temple Street, Suite 1200
Salt Lake City, UT 84111
Telephone: (801) 401-8625
jadamson@buchalter.com
tlevis@buchalter.com
hmorris@buchalter.com
*Attorneys for Receiver Chad S. Pehrson*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CHAD S. PEHRSON, in his capacity as Court appointed Receiver,<br><br>Plaintiff,<br>v.<br><br>JACOB CAZIER, in his individual capacity,<br><br>Defendant. | **COMPLAINT**<br><br>**(Ancillary to Case No. 1:22-cv-00135-RJS-DBP – General Order 23-009)**<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Receiver Chad S. Pehrson hereby alleges, avers, and complains of Defendants Jacob Cazier ("Cazier") and Cazier Group, LLC ("Cazier Group") (collectively, "Defendants") as follows:

### SHORT SUMMARY OF ACTION

1. Plaintiff Chad Pehrson (the "Receiver") is acting in his capacity as Court-appointed Receiver in Case No. 1:22-cv-00135 pending in this District, over the assets of the Estate of Stephen Romney Swensen, which include the assets of WS Family, IP, LLC, Crew Capital Group, LLC, and Swensen Capital, LLC (collectively, the "Receivership Defendants").

2. Stephen R. Swensen ("Swensen") operated a classic Ponzi scheme since at least June 2011 until the death of Swensen in June 2022.

3. From at least 2011, Swensen offered and sold fictitious investments in Crew Capital, falsely claiming guaranteed annual returns of 5–10% and promoting it as a low-risk retirement investment. He used deceptive marketing materials, fake account statements, and a fraudulent website to lure investors.

4. Investor funds were deposited into a Wells Fargo account controlled solely by Swensen under the name Crew Capital. Swensen misappropriated these funds rather than investing them as promised.

5. In 2018, Cazier formally joined the scheme as Swensen's business partner and knowingly assisted in its expansion. Through Navigation Capital Group, LLC, which he co-managed with Swensen, Cazier promoted the fraudulent investments to clients, participated in financial planning meetings, and received investor funds despite knowing—or recklessly disregarding—that the investments were fictitious.

6. Cazier and his company, Cazier Group, received at least $296,290.97 in investor funds from Crew Capital without providing reasonably equivalent value. These transfers furthered the Ponzi scheme, and the Receiver seeks to recover them for the benefit of defrauded investors.

## PARTIES, JURISDICTION, AND VENUE

7. On August 8, 2023, the Receiver was appointed by this Court to identify, collect, and preserve the estates of the Receivership Defendants for the benefit of the estate's creditors, including over fifty defrauded investors.

8. Cazier and Cazier Group are recipients of funds from the Ponzi scheme.

9. This Court has jurisdiction over the subject matter of this action because it is ancillary to the SEC Action and the appointment of the Receiver by this Court.

10. Plaintiff has explicitly been granted authority to pursue fraudulent transfer actions.

11. Cazier is a resident of Davis County, Utah.

12. Cazier Group is a single member limited liability company organized under the laws of Utah with a principal place of business in Davis County, Utah; Cazier is the only member and principal of Cazier Group.

13. Cazier and Cazier Group have sufficient minimum contacts with Utah that personal jurisdiction is appropriate in this Court. Personal jurisdiction is also proper pursuant to 28 U.S.C. §§ 754, 1367, 1692.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 754, 1391(b).

## THE RECEIVER, STANDING, AND STATUS OF SEC ACTION

15. On October 14, 2022, the Securities and Exchange Commission ("SEC") filed a complaint against the Receivership Defendants in the United States District Court for the District of Utah, Case No. 1:22-cv-00135-RJS-DBP (the "SEC Action").

16. The SEC Action alleged that the Receivership Defendants fraudulently solicited over $29 million from investors, whom they tricked into investing in Crew Capital OPS, LLC ("Crew Capital"), which was allegedly co-managed by a reputable firm and purported to guarantee investors a minimum annual return.

17. The SEC alleged that the Receivership Defendants did not invest in any securities. Instead, they misappropriated essentially all investor funds to make Ponzi scheme payments to other investors and to pay for Swensen's personal expenses, such as real estate, vehicles and multiple private aircrafts, and living expenses for him and his family.

18. On August 8, 2023, the Court entered an Order Appointing Receiver and Staying Litigation (the "Appointing Order"), appointing Chad S. Pehrson as permanent Receiver.

19. Pursuant to the Appointing Order, the Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located.

20. The Receiver is further authorized to take immediate possession of all real property of the Receivership Defendants, wherever located.

21. The Receiver is further authorized to initiate suit to recover all property of the Receivership Defendants in the possession of third parties.

22. Since the entry of the Appointing Order, preliminary injunctions have been entered as to all the Receivership Defendants

## **THE FRAUDULENT PONZI SCHEME**

23. Swensen was a registered representative of broker-dealers Summit Brokerage Services, Inc. (March 2010 to June 2014), Allegis Investment Services, LLC (July 2014 to May 2018), and J.W. Cole Advisors, Inc. (May 2018 to June 2018), and Wealth Navigation Advisors (June 2018 to June 2022).

24. In the course of the Ponzi Scheme, the Receivership Defendants made material misrepresentations and omissions, misappropriated investments and other funds, and committed fraud as a commodity pool operator.

25. From at least July 2011, Swensen began offering and selling investments in Crew Capital Group, LLC. Swensen approached his customers and clients during meetings, during which he provided advice on their investment portfolios and retirement plans. He suggested that they include Crew Capital in their investment and retirement strategies.

26. Swensen informed investors that Crew Capital was a safe investment fund offering guaranteed minimum annual returns of 5%. He claimed that Crew Capital could provide their retirement income and described it as a safe option for their portfolios.

27. Swensen also provided some investors with written documentation about the fictitious Crew Capital investment, falsely portraying Crew Capital as an "actively managed portfolio" investing in senior secured floating rate loans and options on the S&P index.

28. Swensen created a website for Crew Capital with the help of a web developer and a graphic designer. Initially named Capital Cooperative, the website was found at www.capitalcoop.com. Later, when it became Crew Capital in 2015, the website changed to www.crewfunds.com. These sites claimed that Crew Capital could remove market risk, stating: "Do you want to eliminate market turbulence? Talk to your financial advisor about how." Swensen gave investors login details for these sites, where they could see their account balances, including fake returns. The accounts supposedly showed daily growth of the guaranteed 5% yearly returns, with an extra lump sum payment of up to another 5% annual return on the anniversary of their investment. However, these statements and claims were fabricated.

29. Swensen managed a bank account at Wells Fargo Bank under the name of Crew Capital. He had exclusive control over the account and used it to pool investor funds from Crew Capital.

30. Swensen acquired investor funds by instructing investors at different times to write personal checks to Crew Capital, obtaining cashier's checks payable to Crew Capital, wiring funds directly to Crew Capital's accounts at Wells Fargo Bank, and/or signing documents authorizing the transfer of funds into Crew Capital's account from their other investment or retirement accounts.

31. Cazier formally joined Swensen as a business partner in 2018 and became actively involved in the operations of Crew Capital. At that time, the Ponzi Scheme was well underway, and Cazier assumed a direct role in its continued execution and expansion.

32. Cazier regularly participated in financial planning meetings alongside Swensen, during which they discussed investment strategies with clients.

33. Cazier knowingly operated in concert with Swensen to perpetrate the fraudulent investment scheme. He was aware that clients were investing in Crew Capital and understood, or recklessly disregarded, that the purported investment structure and promised returns were fictitious and materially misleading. Despite this knowledge, Cazier continued to promote the investment and facilitated its sale to new and existing clients.

34. Through Navigation Capital Group, LLC ("Navigation Capital"), a business entity he co-managed with Swensen, Cazier provided investment advisory services, securities brokerage services, and insurance products to clients.

35. Cazier and Cazier Group received portions of the defrauded investors' funds from Swensen and Crew Capital.

36. The amount of investor funds Cazier received from Swensen and Crew Capital is no less than $296,290.97. The transfers of those funds to Cazier furthered the fraudulent investment scheme without any legally recognized value for the transferred money.

## FIRST CLAIM FOR RELIEF
### (Avoidance of Fraudulent Transfers)

37. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

38. The Receivership Defendants operated Crew Capital as a Ponzi scheme.

39. The Receivership Defendants paid Defendants at least $296,290.97 from accounts controlled by Swensen and Crew Capital. At the time of these transfers, the Receivership Defendants were insolvent or became insolvent as a result of the transfers, or were engaged in

business for which their remaining assets were unreasonably small in relation to their obligations. Defendants did not provide reasonably equivalent value in exchange for the funds received.

40. Because the Receivership Defendants operated a Ponzi scheme, as a matter of law, the transfers to Defendants were made with the intent to hinder, delay, or defraud creditors.

41. Defendants knew or should have known because of Cazier's longstanding relationship with Swensen that the transfers were not made in the ordinary course and were likely made in furtherance of fraudulent conduct.

42. Pursuant to Utah's Uniform Voidable Transactions Act, specifically Utah Code Ann. § 25-6-5 (actual fraud) and § 25-6-6 (constructive fraud), the Receiver may avoid and recover the transfers made to Cazier.

43. Defendants did not provide reasonably equivalent value to any Receivership Defendants for the amounts the Receiver seeks to avoid.

44. Pursuant to Utah's Uniform Voidable Transactions Act, including Utah Code Ann. § 25-6-5 (actual fraud) and § 25-6-6 (constructive fraud), the Receiver may avoid and recover the transfers made to Defendants.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

45. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

46. The transfers to Defendants were comprised of property of the Receivership Defendants and were made by the Receivership Defendants in furtherance of the fraud scheme.

47. The transfers to Defendants conferred a benefit on Cazier and Cazier Group

48. Defendants knowingly accepted the benefits conferred by the Receivership Defendants.

49. Allowing Defendants to retain the transfers at issue in this lawsuit would unjustly enrich Defendants and be inequitable.

50. Defendants did not provide reasonably equivalent value to the Receivership Defendants in exchange for the transfers, which were made using funds obtained from defrauded investors. Allowing Defendants to retain these funds would unjustly enrich Defendants at the expense of the victims of the Ponzi Scheme, who are the rightful owners of the funds.

51. Absent the return of the transfers, the Receivership Estate would be damaged by Defendants' unjust enrichment and may have no adequate remedy at law.

52. Defendants must disgorge the amount of the transfers.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver requests judgment against Defendants as follows: (1) disgorging the amount of the transfers, which is expected to be no less than $296,290.97; (2) awarding pre- and post-judgment interest, costs, and reasonable attorney's fees allowed by law; (3) granting such other and further relief as the Court deems just and proper.

DATED this __ day of January 2026.

**BUCHALTER LLP**

*/s/ R. Jeremy Adamson*
R. Jeremy Adamson
Tucker F. Levis
Henry Morris
*Attorneys for Receiver*