R. Jeremy Adamson (Utah SBN 12818)
Tucker F. Levis (Utah SBN 17793)
**BUCHALTER LLP**
60 E. South Temple Street, Suite 1200
Salt Lake City, UT 84111
Telephone: (801) 401-8625
jadamson@buchalter.com
tlevis@buchalter.com

*Attorneys for Receiver Chad S. Pehrson*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE OF STEPHEN ROMNEY SWENSEN, and CREW CAPITAL GROUP, LLC, a Nevada limited liability company,<br><br>Defendants,<br><br>WENDY SWENSEN, an individual, SARIA C. RODRIGUEZ, an individual, WS FAMILY IP, LLC, a Utah limited liability company, WINGMAN, LLC, a Utah limited liability company, and SWENSEN CAPITAL, LLC, a Utah limited liability company,<br><br>Relief Defendants. | **ORDER AND MEMORANDUM DECISION GRANTING RECEIVER'S AMENDED MOTION TO APPROVE PROPOSED DISTRIBUTION METHOD AND FIRST INTERIM DISTRIBUTION**<br><br>Case No.: 1:22-cv-00135-RJS-DBP<br><br>Judge: Robert J. Shelby<br><br>Magistrate Judge: Dustin B. Pead |

In October 2022, the Securities and Exchange Commission ("SEC") brought this action against Defendants The Estate of Stephen Romney Swensen and Crew Capital Group, LLC (collectively, "Defendants"), accusing them of operating a Ponzi scheme, and naming Wendy Swensen, Saria C. Rodriguez, WS Family IP, LLC, Wingman, LLC, and Swensen Capital, LLC as Relief Defendants (Dkt. 2). On August 8, 2023, the Court appointed Chad Pehrson as Receiver for The Estate of Stephen Romney Swensen, Crew Capital Group, LLC, Wingman, LLC, WS

Family IP, LLC, and Swensen Capital, LLC (collectively, the "Receivership Estate") (Dkt. 38).

The Receiver has filed a motion to approve his proposed distribution plan to compensate the victims of the Crew Capital/Swensen fraud (Dkt. __). Having reviewed the motion, the Court now grants the Receiver's motion.

## I.      Legal Standard

This Court has "broad powers and wide discretion to determine relief" in a receivership, including any distribution plan that is "fair and reasonable." *S.E.C. v. Vescor Capital Corp*., 599 F.3d 1189, 1194 (10th Cir. 2010); *S.E.C. v. Byers*, 637 F. Supp. 2d 166, 174 (S.D.N.Y. 2009). In general, courts favor the pro rata distribution of assets "where funds of defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders." *S.E.C. v. Merrill Scott & Assocs., Ltd*., No. 2:02-cv-39, 2007 WL 26981, at *2 (D. Utah Jan. 3, 2007) (unpublished) (quoting *S.E.C. v. Credit Bancorp, Ltd*., 290 F.3d 80, 88–89 (2d Cir. 2002)). Pro rata distribution is especially appropriate for fraud victims of a Ponzi scheme. *Credit Bancorp*, 290 F.3d at 89 (collecting cases).

The net investment method is a commonly used pro rata distribution method used in apportioning receivership assets for Ponzi scheme cases, particularly where funds were commingled and all investors had a similar relationship to the wrongdoer. *Commodity Futures Trading Commission v. Walsh,* 712 F.3d 735, 749 (2d Cir. 2013), (citing *S.E.C. v. Credit Bancorp, Ltd*., 290 F.3d 80, 88–89 (2d Cir. 2002)); *see also S.E.C. v. Infinity Group Co*., 226 F. App'x. 217, 2018 (3d Cir. 2007); *CFTC v. Topworth, Intern., Ltd*., 205 F.3d 1107, 1116 (9th Cir. 1999); *S.E.C. v. Illarramendi*, No. 2:11-cv-078, 2013 WL 6385036, at *3 (D. Conn. Dec. 6, 2013) (unpublished).

## II.     Proposed Distribution Plan

The Receiver proposes distributing assets using the net investment method. This is

2

essentially a pro rata distribution that calculates each investor's net investment in the scheme by subtracting the investor's distributions or withdrawals from their total investment. Investors who received more than what they invested will not receive distributions from the Receiver. The remaining investors, i.e., net losers, will share pro rata in available funds in proportion to their net loss relative to the total net losses of all claimants. To do so, the investor's net investment is then compared against the total amount of all net investments to determine the investors' percentage of all net investment. That percentage is then multiplied against the amount recovered by the Receiver to determine what portion of the Receiver's funds should be paid to the investor.

The following illustration assumes there are only five investors:

| Investor | Total Investment | Total Withdrawals | Net Investment | Percentage Return | Distribution (Dollars) |
|---|---|---|---|---|---|
| A | $200,000 | $50,000 | $150,000 | 15% | $52,500 |
| B | $500,000 | $100,000 | $400,000 | 40% | $140,000 |
| C | $300,000 | $250,000 | $50,000 | 5% | $17,500 |
| D | $700,000 | $300,000 | $400,000 | 40% | $140,000 |
| E | $250,000 | $275,000 | ($25,000) | N/A | |
| Totals | $1,950,000 | $975,000 | $1,000,000 | 100% | $350,000 |

Under this scenario, Investor E is a net winner because they withdrew more than they invested, and therefore they are not entitled to a distributions. The total net losses of all net losers equal $1,000,000. Each net loser's pro rata share is calculated by comparing their individual net investment loss against the total losses of all net losers. Each net loser then receives a pro rata share of the Receiver's assets available for distribution. In this example, the receiver has $350,000. Thus, Investor A would receive $52,500, Investor B would receive $140,000, Investor C would receive $17,500, and Investor D would receive $140,000.

The method is simple, clear, and based on objective criteria, which minimizes legal disputes and administrative complexity for a Receivership Estate with limited assets. This is

3

particularly important, here, where assets were commingled, and tracing contributions to the scheme is challenging due to irreconcilable records and the timespan of the fraud. The Receiver's proposed method provides equal, proportionate returns, and ensures that lost principal is returned to all defrauded investors. The Receiver's proposed distribution method returns funds to a broader swath of defrauded investors, which given the personal and longstanding nature of this Ponzi scheme, is a reasonable goal. The net investment method also reduces administrative costs and expedites the process of evaluating claims and issuing distributions, which will also conserve receivership assets to maximize distributions for defrauded investors.

The Receiver proposes a distribution, using the net investment method, in the amount of $4,750,000, to the individuals as set forth in Exhibit A to the Motion. The Receiver has reserved sufficient funds to settle claims or disputes made in response to this Motion, as well as prosecute lawsuits to recover funds of the Receivership Estate.

### III.    Notice, Claims Bar Date, and Distribution Procedures

The Receiver served a copy of his Motion to all known potential investors and claimants via first class mail and email to the extent that the Receiver has mail and email addresses for those investors, and by posting this to the Receiver's website.

The Receiver requests that the Court establish a deadline of thirty days from posting of this Amended Motion to the Receiver's website for potential investors and claimants who are unknown or otherwise not accounted for in the proposed Distribution Plan ("Unknown Claimants") to submit any claim to the Receiver. The Receiver has reserved sufficient funds to address potential disputed or late-resolved claims without disturbing the proposed interim distribution. As such, the Court may approve the proposed distribution method and authorize the first interim distribution without addressing claims from Unknown Claimants, which may be addressed at a later time.

## ORDER

The Receiver's Amended Motion to Approve Distribution Method and First Interim Distribution (Dkt. ___) is hereby GRANTED. The Receiver is hereby authorized to make the first interim distribution in the amount of $4,750,000 from the Receivership Estate, to the individuals and in the amounts set forth in the Amended Motion. The Receiver's request for a claims bar date is granted. Any new, unknown, or disputed claims must be made with the Receiver are required to be made to the Receiver within thirty (30) days of the Receiver's posting of this Order granting the Amended Motion on the Receiver's website.

DATED:

_____
Robert J. Shelby
U.S. District Court Judge

5